IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OKITA ALLEN, as              :    CIVIL ACTION
administratrix of the estate :
of Carnez William Boone, Jr., :
and individually             :
                             :
                             :
        v.                   :
                             :
YOUTH EDUCATIONAL SERVICES   :
OF PA, LLC, et al.           :    NO. 12-4269


MEMORANDUM

McLaughlin, J.                            April 2, 2013

        This § 1983 suit arises from the drowning death of a

teenage boy in the custody of a privately owned juvenile facility

acting pursuant to a contract with the Delaware County Department

of Juvenile Probation and Delaware County Department of Human

Services.  The boy's mother, Okita Allen, brings suit against the

facility, YES Academy, two related corporate entities, and nine

individual defendants associated with YES Academy, including an

unnamed John Doe defendant.[1]  Allen asserts claims for violations

of her son's rights under the Eighth and Fourteenth Amendments.

All of the defendants have jointly moved to stay or dismiss the

present action in favor of a proceeding pending in the

Pennsylvania Court of Common Pleas, involving all parties to the

_____

        [1] John Doe is not listed as a defendant in the case caption
heading the amended complaint.  Doe is, however, described as a
defendant in the section of the complaint entitled "Parties."
See Am. Compl. ¶ 30.

instant suit and arising out of the same set of events.  Their
request is predicated on invocation of the Court's abstention
powers under <u>Colorado River Water Conservation District v. United
States</u>, 424 U.S. 800 (1976), and its progeny.  In the
alternative, the defendants move to dismiss all claims against
them pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  Oral
argument on the defendants' motion was held on February 21, 2013.

        The Court will not stay or dismiss this action in favor
of the pending Pennsylvania matter, as it does not find
application of <u>Colorado River</u> abstention to be appropriate.  It
will, however, grant in full the defendants' alternative request
to dismiss Allen's claims for failure to state a claim.  Allen's
claims against all defendants are dismissed without prejudice.
She will be afforded sixty (60) days from the date of this
Memorandum to amend her complaint.

I.  <u>Background</u>

        All facts regarding the parties and the events giving
rise to Allen's substantive claims are taken from the amended
complaint in this action.  The Court accepts as true all well-
pleaded facts in the amended complaint and draws all reasonable

---

        [2] Defendant Michael Kracko is not listed as a moving
defendant on the defendants' motion.  At oral argument, however,
defendants' counsel clarified that Kracko joins in the motion to
stay or dismiss, along with all other defendants.  2/21/13 Hr'g
Tr. at 30-31.

inferences in favor of the non-moving party, while disregarding any legal conclusions. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court's description of the parties' concurrent Pennsylvania court proceedings is based on documents from those judicial proceedings, which the defendants have submitted as exhibits to their motion and which the Court may consider on a motion to dismiss. <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006).

### A. <u>The Defendants</u>

YES Academy is located in Mercer County, in western Pennsylvania. It is a privately run "staff secured residential care facility for male adolescents between the ages of 11 and 18." YES Academy rehabilitates minors referred by the juvenile probation departments of counties throughout Pennsylvania. The academy is affiliated in some manner with two other private business entities, Youth Educational Services of PA, LLC ("YES of PA"), and Youth Services Academy Incorporated ("YSA," and, collectively, "YES Defendants").[3] Am. Compl. ¶¶ 6, 16-17, 19.

YSA is licensed by the Pennsylvania Department of Public Welfare's Office of Children, Youth and Families Division to "provide comprehensive treatment programs for adolescent males

---

[3] The amended complaint does not explain the relationship among the three organizations.

adjudicated by the Juvenile Courts" of Pennsylvania.[4]  At all

times relevant to this suit, the YES Defendants held a contract

with the Delaware County Department of Human Services and

Delaware County Department of Juvenile Probation to provide

treatment services to minors adjudicated by that county's

juvenile court.  The YES Defendants state that their

"progressive, behavioral and independent living system is

unparalleled in the state of Pennsylvania" and that YES Academy

is "the premier treatment facility in the state specializing in

the treatment of juvenile sex offender[s] and juvenile fire

setters."  Id. ¶¶ 18, 38-40 (quotation marks omitted).

        Philip Ehrlich is the president of YES of PA.  Ehrlich

is responsible for establishing and implementing policies and

procedures that ensure juvenile probationers are safe, healthy,

and afforded civil rights while resident at YES Academy.  To that

end, he develops employment security procedures so that the hired

staff pose no danger to the juvenile residents.  Ehrlich has

responsibility for training and supervising YES Academy staff,

investigating allegations of abuse by academy staff, and

disciplining personnel who engage in abusive behavior.  Id.

¶¶ 21, 47-48.

---

        [4] The term "adjudicated" in this context appears to refer to
a determination of delinquency or other misconduct.  It does not
mean that the minor was simply tried or evaluated by a
Pennsylvania juvenile court.  See, e.g., In re R.D.R., 876 A.2d
1009 (Pa. Super. Ct. 2005).

Joseph Ferrainola is the owner and executive director of YES Academy.  Like Ehrlich, he is responsible for safeguarding the health, safety, and civil rights of YES Academy's juvenile residents.  He is also responsible for developing YES Academy's safe hiring practices and training and monitoring YES Academy staff in their interactions with the residents.  Id. ¶¶ 22, 53-54.

The other defendants, Michael Kracko, Damian Ferrainola, Justin Ferrainola, Barry DiBacco, Nathan Pebbles, and Connor Powell are all counselors or teachers at YES Academy. Justin Ferrainola and/or DiBacco may also hold the position of assistant director of admissions, and Pebbles may be a case manager at the facility.  Id. ¶¶ 23-28.

John Doe is an unidentified employee of the YES Defendants whose responsibilities include scheduling swimming trips for YES Academy juvenile residents.  Id. ¶ 30.


B.    YES Defendants' Swimming Requirement

Allen alleges that the YES Defendants instituted a policy or custom requiring all juvenile probationers at YES Academy to participate in some form of swimming activity. According to the amended complaint, that policy did not also require employees of the YES Defendants or anyone else to first test the residents' swimming abilities or verify that they were

-5-

able to swim.  The policy, therefore, applied to all YES Academy juvenile residents regardless of swimming ability.  The amended complaint refers to the policy in several different formulations, describing it as a "policy requiring juvenile probation residents to swim, regardless of ability," "a policy which required all juvenile probation residents to engage in swimming activities . . . regardless of the child's ability to swim," and a "polic[y], practice[] and/or custom[] in compelling juvenile probation residents, who could not swim, to jump from a high dive into a lake against their will."[5]  Id. ¶¶ 7, 44-45, 67, 99.

   C.   Injury to Carnez Boone

        In 2010, thirteen-year-old Carnez Boone was adjudicated by the Delaware County Juvenile Court.  He was placed in the custody of the Delaware County Department of Juvenile Probation and Delaware County Department of Human Services.  They, in turn, assigned him to the "care and custody of the YES Defendants," and he became a resident of YES Academy.  Id. ¶¶ 41-42, 66.

_____

   [5] At oral argument, counsel for Allen did not further clarify the terms of the policy and even had difficulty identifying the basis for the amended complaint's assertion that an unconstitutional policy existed.  Ultimately, Allen's attorney knew of no written source in which the defendants articulated the policy at issue in this case.  Instead, he conceded that the existence of a policy obligating residents to engage in swimming activities regardless of skill had been inferred merely from the fact that the defendants took Boone and other juvenile residents on a trip to a lake, during which Boone had gone swimming.  2/21/13 Hr'g Tr. at 24, 26-27.

On July 30, 2010, staff of the YES Defendants took Boone and approximately fifteen other YES Academy juvenile residents to Lakeside Park to swim in the park's lake. Boone did not know how to swim and had not been given a swim test by the YES Defendants or any agency of Delaware County. Lifeguards on duty at Lakeside Park that day asked the YES Academy counselors whether Boone could swim. The counselors told the lifeguards not to worry about it and that Boone "would be fine." Id. ¶¶ 68-69, 71-72 (quotation marks omitted).

That afternoon, several of the YES Academy residents were swimming and jumping into the lake, including from off of a high dive. Boone expressed discomfort and fear about jumping into the lake from the high dive. YES Academy counselors responded by "mock[ing]" Boone's fear and instructed him that he had to jump off of the high dive. At some point, Boone ascended the high dive. YES Academy counselors told him that he could not come down and they directed him to jump. Boone complied with the counselors' instruction and jumped from the high dive into the water. Id. ¶¶ 70, 73-77.

After landing in the lake, Boone had difficulty resurfacing and eventually sank beneath the water. Lifeguards were not immediately able to locate him.[6] A bystander eventually

---

[6] The amended complaint states that "lifeguards were able to locate Carnez [Boone]." Am. Compl. ¶ 80. This appears to be a typographical error, as the other allegations of the amended complaint demonstrate that Boone was not immediately located or

dove into the lake to help.  He found Boone at the bottom of the
lake and pulled him out of the water onto a lakeside dock.  By
that point, Boone had been under water for approximately 15 to 20
minutes.  The lifeguards performed CPR on Boone, and paramedics
were called.  The paramedics arrived and took Boone to the
University of Pittsburgh Medical Center-Horizon, where CPR was
performed for an additional 30 minutes.  Medical personnel were
unable to revive Boone and he was pronounced dead from
asphyxiation at 2:11 p.m.  Id. ¶¶ 78-87, 89.

    D.   Procedural History

      Allen originally filed a lawsuit based on the events
surrounding her son's death on January 26, 2011, in the
Philadelphia County Court of Common Pleas ("Philadelphia County
action").  DX B (Docket, Allen v. Youth Educ. Servs. of PA, LLC,
No. 11-3632 (Pa. Ct. Com. Pl., Phila. Cnty.)).[7]  An amended
complaint, filed in that action on April 6, 2011, named as
defendants all defendants in the present federal suit, as well as
Youth Educational Services Corp.; Lakeside Park Company, the
owner of the lake in which Boone drowned; and individual owners
and employees of that business, including two lifeguards on duty
at the time of the incident.  The amended complaint in the

rescued.  See id. ¶¶ 81-83.

    [7] "DX" refers to the exhibits filed in support of the
defendants' motion to stay or dismiss.

Philadelphia County action alleged several counts of negligence against the defendants. DX C (Am. Compl., <u>Allen v. Youth Educ. Servs. of PA, LLC</u>, No. 11-3632 (Pa. Ct. Com. Pl., Phila. Cnty.)). On July 11, 2011, the judge presiding over the Philadelphia County action issued an order transferring the matter to the Mercer County Court of Common Pleas, finding that venue in Philadelphia County was improper. DX D (7/11/11 Order). A few months after receiving the transfer order, Allen voluntarily dismissed the Philadelphia County action. DX F (9/1/11 Stip. of Voluntary Discontinuance).

Allen thereafter filed a substantially similar suit in the Delaware County Court of Common Pleas, alleging negligence claims against the same defendants and adding as defendants two Delaware County governmental entities ("Delaware County action"). DX H (Am. Compl., <u>Allen v. Youth Educ. Servs. of PA, LLC</u>, No. 11-8827 (Pa. Ct. Com. Pl., Del. Cnty.)). Upon becoming aware of the Delaware County action, the defendants in the Philadelphia County action moved to have Allen's voluntary discontinuance set aside and the Philadelphia County action reinstated. The Philadelphia County Court of Common Pleas granted the motion, finding that the dismissal in Philadelphia County and subsequent initiation of a suit in Delaware County, involving the same parties and underlying events, was a "blatant effort to circumvent [the Philadelphia County] court's order directing the matter to

proceed in Mercer County." DX I (1/5/12 Order).

On June 26, 2012, the Delaware County Court of Common Pleas dismissed the action before it in favor of the first-filed Philadelphia County action, set for transfer to Mercer County. DX G (Docket, Allen v. Youth Educ. Servs. of PA, LLC, No. 11-8827 (Pa. Ct. Com. Pl., Del. Cnty.)); 2/21/13 Hr'g Tr. at 45. Allen commenced the suit presently before this Court one month later, on July 27, 2012, and filed her amended complaint on September 14, 2012.

E.    Present Allegations Against the Defendants

Boone's mother, Okita Allen, alleges in this suit that the defendants' actions caused Boone's death. She claims that Boone's death is attributable to the YES Defendants' mandatory swimming requirement that did not provide for prior testing or verification of a juvenile resident's swimming ability. She also claims that all of the defendants were aware of and "responsible for implementing" that policy. The amended complaint further asserts that Damian Ferrainola, Justin Ferrainola, DiBacco, Pebbles, Powell, and Kracko knew that Boone, in particular, would be required to swim, despite not knowing how, and that they did not take any action to prevent Boone's forced compliance with the policy. According to the amended complaint, Ehrlich also knew that he did not have in place policies and procedures necessary

to protect the civil rights of minors in residence at the YES Academy.  Id. ¶¶ 48-51, 55-57, 61-63, 94-99.

Allen claims that the defendants were, at all times, acting pursuant to authority delegated by the government of Delaware County and were, therefore, acting under the color of state law.  She alleges that the swimming policy adopted by the YES Defendants and the individual defendants' facilitation of that policy, as well as the individuals' other conduct, violated Boone's Eighth Amendment, substantive due process, and procedural due process rights.  She seeks both compensatory and punitive damages.

II.  Analysis

The defendants offer two reasons as to why this case should not go forward.  First, they argue that the Court should apply the Colorado River abstention doctrine to stay or dismiss this suit in favor of the proceedings currently pending in the Pennsylvania Court of Common Pleas.  In the alternative, the defendants move to dismiss Allen's § 1983 claims for failure to state a claim.  The Court finds that this case does not warrant application of Colorado River abstention.  The Court will, however, dismiss without prejudice Allen's claims against all defendants for failure to state a claim.

A. <u>Abstention</u>

The defendants argue that the Court should stay or dismiss the present action, given that it is substantially similar to the suit currently pending in the Court of Common Pleas and maintaining both actions would result in duplicative litigation.  As a general matter, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  <u>Colo. River</u>, 424 U.S. at 817 (quotation marks and citation omitted); <u>see also</u> <u>IFC Interconsult, AG v. Safeguard Int'l Partners, LLC</u>, 438 F.3d 298, 305 (3d Cir. 2006).  The doctrine known as <u>Colorado River</u> abstention carves out an exception to that maxim and permits a federal court to stay or dismiss an action that parallels a pending state court action where there are "exceptional circumstances" for doing so.  <u>Colo. River</u>, 424 U.S. at 813; <u>see also</u> <u>Chiropractic Am. v. Lavecchia</u>, 180 F.3d 99, 103 (3d Cir. 1999) ("Abstention from the exercise of jurisdiction . . . is the exception rather than the rule.").

1. <u>Parallel Proceedings</u>

The threshold inquiry in <u>Colorado River</u> abstention analysis is whether the pending federal and state court actions are "truly duplicative."  <u>Trent v. Dial Med. of Fla., Inc.</u>, 33 F.3d 217, 223 (3d Cir. 1994).  Cases are "truly duplicative" or

parallel when they involve (1) essentially the same parties and
(2) "substantially identical claims," raising "nearly identical
allegations and issues."  See Yang v. Tsui, 416 F.3d 199, 204 n.5
(3d Cir. 2005) (quotation marks and citation omitted).

Notably, it is not necessary that the parties in the
two proceedings be identical to create the parallelism necessary
for Colorado River abstention.  Trent, 33 F.3d at 22 & n.6; see
also IFC Interconsult, AG, 438 F.3d at 306 (noting that the Court
of Appeals for the Third Circuit has "never required complete
identity of parties for abstention").  This circuit's precedent
seems to caution against abstention only where all of the
defendants in the federal action are not also defendants in the
state court action, i.e., where a plaintiff could not bring in
her state court case all claims asserted in the federal action.
See Trent, 33 F.3d at 224 & n.6.  Abstention may still be proper
even if all state court defendants are not named in the federal
case.  Here, all of the defendants in the case before this Court
are also defendants in the Philadelphia County action.  The
parties in the two actions are, therefore, sufficiently similar
to permit Colorado River abstention.

The chief issue is whether the claims in the
Philadelphia County action and the claims in Allen's amended
complaint before this Court are "substantially identical."  The
Seventh Circuit frames the identity of claims test as asking

-13-

"whether there is a substantial likelihood that the state
litigation will dispose of all claims presented in the federal
case." Adkins v. VIM Recycling, Inc., 644 F.3d 483, 499 (7th
Cir. 2011) (quotation marks and citation omitted). "Any doubt
regarding the parallel nature of the [state] suit should be
resolved in favor of exercising jurisdiction." Id. (quotation
marks and citation omitted) (alteration in the original); see
also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S.
1, 28 (1983).

        The Court finds substantial identity between the claims
in this and the Pennsylvania County action to be lacking. For
one thing, the claims in the two suits emanate from distinct
bodies of law. In the Court of Common Pleas suit, Allen asserts
negligence claims under Pennsylvania law, whereas her claims
before this Court are brought under § 1983 and are premised on
violations of the Eighth and Fourteenth Amendments. As a result,
the claims in the two proceedings turn on different standards of
liability. Constitutional claims of the sort alleged by Allen
cannot be sustained on a showing of negligence. Instead, she
must demonstrate that the defendants were deliberately
indifferent to the risk of serious harm, a heightened standard of
culpability. Farmer v. Brennan, 511 U.S. 825, 828-29, 835-37
(1994); A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention
Ctr., 372 F.3d 572, 579 (3d Cir. 2004). Even if the Court of

Common Pleas found the defendants liable on a theory of negligence, that would not resolve their liability under the constitutional standard relevant to Allen's federal lawsuit.

Additionally, Allen's federal suit includes a distinct claim pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), alleging that the defendants maintained a policy that resulted in her son's death. As the defendants concede, Allen's prior pleadings in Pennsylvania court make no mention of an unconstitutional policy or custom, or even that the defendants acted with deliberate indifference. Def'ts' Br. at 24. Thus, resolution of the parties' litigation in the Court of Common Pleas would not necessarily "dispose of all claims presented in [this] case," and the proceedings are not sufficiently parallel to trigger application of the <u>Colorado River</u> abstention doctrine. <u>Adkins</u>, 644 F.3d at 499.

Given the common factual background between the two cases, it may be that, if concluded first, the proceedings in the Court of Common Pleas will have some collateral estoppel effect on this action. That, as already noted, however, is not enough to permit abstention. <u>See</u> <u>Univ. of Md. v. Peat Marwick Main & Co.</u>, 923 F.2d 265, 275-76 (3d Cir. 1991).

### 2. Application of *Colorado River* Factors

Even if the cases could be considered parallel,

"exceptional circumstances" warranting abstention do not exist.
Courts determining whether to abstain at the second stage of the
Colorado River analysis must consider the following factors:
(1) which court first assumed jurisdiction over the property, if
any, involved; (2) the inconvenience of the federal forum;
(3) the desirability of avoiding piecemeal litigation; (4) the
order in which the respective courts obtained jurisdiction;
(5) whether federal or state law applies; and (6) whether the
state court proceeding will adequately protect the federal
plaintiff's rights.  Nationwide Mut. Fire Ins. Co. v. George V.
Hamilton, Inc., 571 F.3d 299, 308 (3d Cir. 2009).  A federal
court's balancing of those factors is "heavily weighted in favor
of the exercise of jurisdiction."  Moses H. Cone, 460 U.S. at 16.

        The first factor is not implicated in this case, as
Allen's suit does not involve disposition of a piece of property.
At best, the defendants' cause is aided by the second factor,
inconvenience of the federal forum.  The defendants maintain that
litigating in the Eastern District of Pennsylvania would be
inconvenient, given the case's close connections to Mercer
County, which is located over 400 miles away on the Pennsylvania-
Ohio border.  The defendants point out that the Philadelphia
County action has been ordered transferred to the Mercer County
Court of Common Pleas and that most of the defendants, the lake
at which the accident occurred, and all of the key witnesses are

located in Mercer County.  It is worth noting that the
inconvenience to the defendants and potential witnesses is
somewhat counterbalanced by the fact that the plaintiff resides
within this federal district.

Even giving due consideration to the defendants'
inconvenience argument, the other factors relevant to Colorado
River analysis militate against abstention.  Avoidance of
piecemeal adjudication is no reason to defer jurisdiction in this
case.  The Third Circuit has emphasized that this factor is an
important consideration "only when there is evidence of a strong
federal policy that all claims should be tried in the state
courts."  Ryan v. Johnson, 115 F.3d 193, 197-98 (3d Cir. 1997).
No such federal policy is evident when it comes to claims
asserted under § 1983.  Harris v. Pernsley, 755 F.2d 338, 346 (3d
Cir. 1985).  Indeed, the fact that, in her federal suit, Allen
seeks to vindicate rights under federal law is a "major
consideration weighing against surrender" of this Court's
jurisdiction.  Moses H. Cone, 460 U.S. at 25-26.  That
Pennsylvania courts have concurrent jurisdiction over § 1983
actions and would, therefore, be able to adjudicate Allen's
federal claims also does not counsel in favor of abstention.  As
the Third Circuit has noted, a state court's ability to protect a
federal party's rights is only relevant when the state court
lacks that power; "[w]hen the state court is adequate, . . . the

[sixth] factor carries little weight." <u>Ryan</u>, 115 F.3d at 200; <u>see also</u> <u>Spring City Corp. v. Am. Bldgs. Co.</u>, 193 F.3d 165, 172 (3d Cir. 1999).

Lastly, it is true that the Philadelphia County action was instituted eighteen months before Allen filed her complaint in federal court.  As the Supreme Court has observed, though, the relative priority of two actions under <u>Colorado River</u> review should be based on "how much progress has been made in the two actions" and not simply on which complaint was filed first. <u>Moses H. Cone</u>, 460 U.S. at 21.  In connection with the Pennsylvania proceeding, the litigants have exchanged some written discovery and Allen has taken the deposition of a representative of one of the YES Defendants.  Def'ts' Br. at 16-17.  The parties have informed the Court that this discovery related solely to whether Philadelphia County was a proper venue for that action.  Pl.'s Opp. at 11; 2/21/13 Hr'g Tr. at 11.  No fact discovery has yet taken place.  2/21/13 Hr'g Tr. at 43. Although filed first, the Pennsylvania court action has, therefore, progressed but a little and stands in roughly the same position as this suit.  This relative parity in the stage of proceedings further weighs against a stay or dismissal.  Based on its review of these foregoing factors, the Court finds that this case does not present the "exceptional circumstances" necessary to merit a stay or dismissal under <u>Colorado River</u>.

The defendants seek a different result by attempting to engraft an additional factor onto the Colorado River analysis. They argue that the Court may also consider whether the federal suit is an attempt to forum shop, citing the Ninth Circuit's decision in AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1155 (9th Cir. 2007), and the Eastern District of California's decision in Robinson v. Nestle Waters North America, Inc., No. 11-856, 2011 WL 2174375, at *5-6 (E.D. Cal. June 1, 2011). According to defendants' counsel, Allen still has yet to effectuate transfer of the Philadelphia County action to Mercer County, even though her appeal from the order striking her voluntary discontinuance and transferring venue was quashed by the Pennsylvania Superior Court in May 2012. 2/21/13 Hr'g Tr. at 43; DX K (5/10/12 Order). The defendants argue that initiation of the present suit is yet another attempt to avoid litigating in Mercer County.

It is not clear that the Court's Colorado River analysis may look to the plaintiff's motivation in filing a federal action, absent evidence that the suit is "vexatious" or "contrived." See Moses H. Cone, 460 U.S. at 17 n.20; Allied Nut & Bolt, Inc. v. NSS Indus., Inc., 920 F. Supp. 626, 632 (E.D. Pa. 1996). Consideration of forum shopping in the context of Colorado River abstention is not widespread and appears to be localized to the courts of the Ninth Circuit. See 17A Charles A.

Wright, et al., Federal Practice & Procedure § 4247 at nn.83-84
(3d ed. 2007).  No court in this circuit has cited with approval
the reasoning employed in AmerisourceBergen or Robinson, and the
Court has not found any decisions of the Third Circuit otherwise
examining this factor for purposes of Colorado River abstention.
See Hong v. EverBeauty, Inc., No. 11-3286, 2012 WL 1042933, at *4
(D.N.J. Mar. 28, 2012).  In any event, because so many of the
other factors tip against abstention, even if the Court were to
consider forum shopping as a reason for employing Colorado River
abstention, the Court would still decline to stay or dismiss this
case.

　　　B.　Failure to State a Claim

　　　　　In her amended complaint, Allen brings § 1983 claims
based on violations of her son's rights under the Eighth
Amendment, substantive due process, and procedural due process.
All three of these constitutional claims are based on the same
conduct.  Allen contends that all of the defendants are
responsible for maintaining a policy or custom that caused
Boone's death and that the individual defendants directly
participated in infringing her son's constitutional rights.[8]  The

_____

[8] The Court notes a preliminary issue not raised by the
defendants.  As a technical matter, Allen cannot proceed on both
her Eighth Amendment and substantive due process claims.
Pursuant to the "more-specific-provision rule," a plaintiff may
not allege a deprivation of both substantive due process rights
and rights protected by a more specific provision of the

defendants move to dismiss all claims, including Allen's request
for punitive damages.

        The Court concludes that, as presently pled, the
allegations of the amended complaint fail to make out a claim for
entity liability under <u>Monell</u>.  The Court similarly finds that
the amended complaint fails to state a claim against the
individual defendants for either their role in establishing and

---

Constitution, such as the Eighth Amendment.  <u>Betts v. New Castle
Youth Dev. Ctr.</u>, 621 F.3d 249, 260-61 (3d Cir. 2010) (citing
<u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 843-44 (1998); <u>United
States v. Lanier</u>, 520 U.S. 259, 272 n.7 (1997); <u>Graham v. Connor</u>,
490 U.S. 386 (1989)).

        The Court's first inquiry, then, should be whether Allen's
claims are properly governed by the Eighth Amendment or
substantive due process.  The Court need not resolve that issue
now, however, as the same standard of liability would apply in
either event.  Regardless of the constitutional provision at
issue, a § 1983 claim based on an entity or individual
defendant's unconstitutional policy or custom is reviewed using a
common analytical framework.  <u>See</u> <u>Connick v. Thompson</u>, 131 S. Ct.
1350, 1358-60 (2011) (discussing policy or custom claims against
entities); <u>Monell</u>, 436 U.S. at 694 (same); <u>Santiago v. Warminster
Twp.</u>, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (discussing policy or
custom claims against individuals); <u>A.M.</u>, 372 F.3d at 586 (same).
With respect to the claims against the individual defendants for
their direct participation in injuring Boone, because the alleged
harm occurred in a custodial setting and the defendants had ample
time for deliberative conduct, the appropriate standard of
liability under either the Eighth Amendment or Due Process Clause
is "deliberate indifference" to the risk of constitutional harm.
<u>See, e.g.</u>, <u>Farmer</u>, 511 U.S. at 828-29; <u>A.M.</u>, 372 F.3d at 579;
<u>Leamer v. Fauver</u>, 288 F.3d 532, 547 (3d Cir. 2002).

        Whether the plaintiff has suffered an injury in a
constitutional sense is a separate question and depends on the
specific constitutional provision at issue.  <u>See</u> <u>Nicini v. Morra</u>,
212 F.3d 798, 806 (3d Cir. 2000) (en banc).  The Court herein
assumes, without deciding, that Boone suffered a cognizable
injury under either the Eighth or Fourteenth Amendment.

-21-

maintaining an unconstitutional policy or participating in the events that caused Boone's death. The Court will, therefore, dismiss without prejudice the claims against all defendants.[9]

The Court will grant Allen sixty days, as opposed to the usual thirty days, to amend her complaint. It does so in view of the fact that the parties' concurrent negligence suit in the Pennsylvania Court of Common Pleas is ready to move forward once transferred to Mercer County. Discovery in that case will shed light on the underlying events common to both actions and may aid Allen in re-pleading her claims before this Court, if she so chooses. In fact, at oral argument, plaintiff's counsel stated that the deposition of a representative for one of the YES Defendants would aid the parties in expeditiously resolving factual issues relating to this case, including the precise scope of any policies or procedures in effect at the time of Boone's drowning. See 2/21/13 Hr'g Tr. at 37, 40-41. Presumably, that deposition may be quickly carried out in connection with the Pennsylvania suit.

1.  Harm Based on the Defendants' Policy

To state a § 1983 claim against a municipal entity, or a private contractor standing in its shoes, a plaintiff must

---

[9] Because the Court dismisses all substantive claims against the defendants, it does not reach the separate issue of whether punitive damages would be available based on the allegations of the amended complaint.

demonstrate that the entity deliberately established a policy or custom that directly caused a constitutionally cognizable injury.[10]  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997) (describing the standard for asserting a Monell claim); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) (applying the Monell standard to a private company acting pursuant to a local government contract).

A plaintiff demonstrates the existence of a policy by showing that "a decisionmaker possess[ing] final authority to establish [an entity's] policy with respect to the action issues an official proclamation, policy, or edict." Mulholland v. Cnty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013) (quotation marks and citation omitted) (first alteration in the original); Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007).  A custom exists when "'practices of state officials [are] so permanent and well-settled,' as to virtually constitute law." Mulholland, 706 F.3d at 237 (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)) (alteration in the original).

---

[10] A plaintiff may also establish liability by demonstrating that the policy or custom, though lawful on its face, led an employee to engage in unconstitutional conduct. Brown, 520 U.S. at 407.  To do so, the plaintiff must show that the policy or custom was enacted with "'deliberate indifference' as to its known or obvious consequences." Id.; see also A.M., 372 F.3d at 580.  The Court understands Allen to allege that the YES Defendants' swimming policy or custom was facially unlawful, not that it merely resulted in unconstitutional acts.

a.    YES Defendants

The amended complaint alleges that the YES Defendants collectively maintained a policy or custom requiring residents of the YES Academy to engage in some form of swimming activity. Allen has not identified which YES entity promulgated that particular policy or which YES entity generally sets procedures for YES Academy.  The precise contours of the swimming policy or custom also are not pled with consistency throughout the amended complaint.  Allen alternately alleges that the YES Defendants had a "policy requiring juvenile probation residents to swim, regardless of ability," "a policy which required all juvenile probation residents to engage in swimming activities . . . regardless of the child's ability to swim," and a "polic[y], practice[] and/or custom[] in compelling juvenile probation residents, who could not swim, to jump from a high dive into a lake against their will."  She further alleges that all of the individual defendants knew about the requirement and were "responsible for implementing" that policy or custom.  Am. Compl. ¶¶ 7, 44-45, 48-50, 55-57, 61-63, 99.

The defendants argue that these allegations are insufficient to state a Monell claim against the YES Defendants. They are plainly correct inasmuch as Allen has not sufficiently pled the "permanent and well settled" course of harm-causing conduct necessary to establish an unconstitutional custom.

<u>Mulholland</u>, 706 F.3d at 237 (quotation marks and citation omitted).  Allen's amended complaint alleges only a policy and enforcement resulting in harm in this one instance.  There is no longstanding custom.

The Court also determines that the amended complaint does not make out a claim based on an unconstitutional policy. As an initial matter, the terms of the alleged policy are not clearly pled.  The Third Circuit has directed that a complaint alleging a <u>Monell</u> claim "must identify a custom or policy, and specify what exactly that custom or policy was."  <u>McTernan v. City of York</u>, 564 F.3d 636, 658 (3d Cir. 2009).  Here, the fact that the policy is articulated in three different formulations–as one that required residents to jump off of a high dive, swim, or "engage in swimming activities"–makes the scope of the policy somewhat difficult to discern.  The policy formulation most often used in the complaint, the mandate that YES Academy residents "engage in swimming activities," is particularly vague.  Such a policy could mean that all residents were required to go in the water in some fashion, but need not proceed farther than an area in which they could stand.  It could also mean that they were obliged simply to attend the outing to Lakeside Park but were not required to go in the water at all.  Because the amended complaint is not otherwise consistent in its description of the YES Defendants' policy, the Court does not know "what exactly

[the] . . . policy was." <u>Id.</u>

Moreover, a plaintiff must demonstrate a "direct causal link between a . . . policy . . . and the alleged constitutional deprivation." <u>Jiminez v. All Am. Rathskeller, Inc.</u>, 503 F.3d 247, 249 (3d Cir. 2007) (quotation marks and citation omitted); <u>see also</u> <u>Watson</u>, 478 F.3d at 156. Accordingly, the way in which the policy is pled impacts whether such a causal nexus has been shown. On the facts alleged, a policy requiring all juvenile residents to swim or jump into the lake could plausibly serve as the cause of Boone's drowning, given that he was unable to swim. The causal relationship between his injury and a policy requiring him to "engage in swimming activities" is far less clear. Without greater clarity regarding the terms of such a policy, it is not evident that the policy, rather than individual staff members' separate instruction to jump into the lake, caused Boone's injury. Because this is the policy formulation used most often throughout the complaint, the amended complaint presents a decidedly weak causal link between policy and injury.

Putting aside any imprecision in the way the policy is pled, a complaint must do more than simply assert the existence of a well-defined policy to withstand a motion to dismiss. A plaintiff must also demonstrate that the challenged action represents an "official policy" of the entity defendant, "properly made by that [entity's] authorized decisionmakers."

Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)
(quotation marks omitted); McTernan, 564 F.3d at 659 (noting that
a complaint must allege a "link between the challenged
restriction and a . . . decisionmaker").

Here, the amended complaint does not sufficiently show
that the alleged swimming policy constitutes an official action
of one or more of the YES Defendants.  Allen does not name the
decisionmaker who issued the policy or state how the policy was
established.  For that matter, the amended complaint attributes
the policy to all of the YES Defendants.  It does not allege
which particular entity issued it.  Nor does the amended
complaint specify the relationship among YES Academy, YSA, and
YES of PA, and whether and how an entity other than YES Academy
may control the academy's internal operations.

Indeed, at oral argument, counsel for Allen stated that
Allen could not identify any written policy statement, either in
a document or on a website maintained by one of the defendants,
describing the policy alleged in the amended complaint.  2/21/13
Hr'g Tr. at 24, 27.  Rather, counsel asserted that a policy may
be presumed because the defendants "instructed a child that he
had to go to a lake, . . . and he didn't have a choice about it."
Id. at 24.  Allen's attorney eventually acknowledged that, at
this point, he did not "know anything more than . . . [the fact]
that [Boone] went swimming" and that the existence of a swimming

-27-

policy had been inferred from that fact.  Id. at 26.
Notwithstanding this admission, the Court evaluates the
sufficiency of Allen's claims based solely on the allegations in
the amended complaint.

Allen does allege that defendant Philip Ehrlich, the
president of YES of PA, was responsible for "establishing and
implementing policies and procedures to ensure the safety, health
and to protect the civil rights of juvenile probation residents."
Am. Compl. ¶ 21.  Elsewhere, the amended complaint specifies that
Ehrlich and Joseph Ferrainola, the executive director of YES
Academy, were responsible for developing "employment security
procedures" meant to ensure that the YES Defendants' staff was
properly screened, trained, and monitored, so that they provided
safe supervision of juvenile residents.  Id. ¶¶ 47, 54.  Allen
does not allege that Boone's injury is traceable to inadequacies
in these hiring or training procedures, though.  Nor does she
allege that either Ehrlich or Joseph Ferrainola established the
swimming policy referenced multiple times throughout the amended
complaint, and it is not readily apparent how such a swimming
policy would fall under their purview of safety- or staff-related
policy development.

The amended complaint also contains an allegation that
each of these two high-ranking defendants was "responsible for
implementing" the swimming policy, which could be construed as an

-28-

assertion that they developed or authorized it.  Id. ¶¶ 48, 55.
The amended complaint makes the exact same allegation against all
of the individual defendants, however, including lower-level
staff, such as counselors and teachers at YES Academy.  Id. ¶ 61.
This undermines the notion that Ehrlich and Joseph Ferrainola, as
policy "implement[ers]," were the decisionmakers responsible for
any swimming requirement and obscures the individuals who
actually formed and promulgated that policy.

        In the end, there is little in the amended complaint to
support the existence of a policy other than the assertion that
one existed.  Certainly, allegations that Boone was taken to a
lake or that he was forced to jump from a high dive by individual
staff members do not demonstrate enactment of an officially
endorsed policy.  Given that the only YES staff referenced as
being present at the lake are "YES Academy counselors," no YES
Defendant policymaker appears to have been on the trip to
Lakeside Park.  Id. ¶¶ 71-72, 74-77.  More importantly, because
entity liability under § 1983 cannot be predicated on respondeat
superior, a single instance of harm-causing conduct by employees
acting on their own accord does not establish the existence of an
unconstitutional policy justifying the imposition of entity
liability.  See, e.g., Brown, 520 U.S. at 403; McTernan, 564 F.3d
at 659.

b.    Individual Defendants

          Because the amended complaint does not sufficiently plead the existence of a harm-causing policy enacted by one or more of the YES Defendants, it likewise fails to state a claim against the individual defendants for their involvement with that policy.  Even if a policy or custom were adequately pled, the amended complaint fails to make the requisite demonstration that any of the individual defendants was an official decisionmaker who established the harm-causing policy.  See A.M., 372 F.3d at 586.

          As noted above, Allen alleges that all of the individual defendants were "responsible for implementing" the policy requiring YES Academy juvenile residents to engage in swimming activities without first undergoing a swim test.  Am. Compl. ¶¶ 48-50, 55-57, 61-63.  Given that this allegation is universally pled against all of the individual defendants, upper-level and rank-and-file employees alike, it is implausible to interpret this assertion as identifying all of them as authorized policymakers.  Rather, Allen has, at best, alleged that the individual defendants carried the policy into effect, and then without even stating how they did so.  That is not enough of a basis on which to premise policymaking liability.

2.   <u>Harm Based on Individual Defendants' Conduct</u>

Allen also alleges that the defendants were directly involved in violating Boone's constitutional rights through their individual conduct.  Under either the Eighth or Fourteenth Amendment, in this custodial setting, such a claim requires a showing that they were deliberately indifferent to a known risk of constitutional harm.  <u>Farmer</u>, 511 U.S. at 834; <u>A.M.</u>, 372 F.3d at 579.

The amended complaint alleges that all of the individual defendants had contemporaneous, personal knowledge that juvenile probation residents would be required to engage in swimming activities regardless of whether they were able to swim. Am. Compl. ¶ 49-50, 56-57, 62-63.  The amended complaint also alleges, with somewhat greater particularity, that defendants Michael Kracko, Damian Ferrainola, Justin Ferrainola, Barry DiBacco, Nathan Pebbles, and Connor Powell knew that Carnez Boone would be required to swim, despite his inability to do so, and that they still took no action to prevent enforcement of the policy.  <u>Id.</u> ¶ 63.

These allegations are insufficient to state a claim of deliberate indifference against the individual defendants. Basing liability on the defendants' knowledge of the policy and failure to prevent its implementation seems to impose liability for the policy itself.  Because these individuals were not

themselves policymakers responsible for designing and issuing the swimming requirement, they cannot be held liable for the policy's existence.  Additionally, the other facts as pled undercut the assertion that certain of the individual defendants were aware of Boone's inability to swim.  The amended complaint states that the defendants did not test the residents' swimming capabilities prior to bringing them to the lake and there is nothing in the amended complaint to suggest that Boone otherwise informed the individual defendants that he could not swim.

The amended complaint does not allege that these defendants themselves forced Boone to swim or that they directed others to do so.  There is no allegation that any of these defendants were the staff members who "mocked" Boone's fear of jumping into the water and "command[ed]" him to jump into the lake from a high dive.  Id. ¶¶ 74, 77.  The amended complaint does not even assert or imply that any of the individual defendants were at Lakeside Park on the day Boone drowned.  The allegation that they had "supervisory" responsibilities over other personnel at YES Academy is insufficient to show that they supervised the staff who ordered Boone to jump into the lake, much less that they knew of and acquiesced in such conduct on the date in question.[11]  See Evancho v. Fisher, 423 F.3d 347, 353 (3d

_____

[11] The Court is aware that, in the wake of Ashcroft v. Iqbal, 556 U.S. 662 (2009), it is questionable whether supervisory liability claims based on knowledge of and acquiescence in the commission of a constitutional violation

Cir. 2005) (noting that a supervisory liability claim may be based on knowledge and acquiescence in wrongdoing); <u>A.M.</u>, 372 F.3d at 586 (same).


### 3. <u>John Doe Defendant</u>

The amended complaint names as a defendant "John Doe," described as an unknown employee responsible for scheduling the YES Academy residents' swimming trips. According to the amended complaint, Doe, like the other individual defendants, was aware that the residents would be required to swim regardless of their ability. Am. Compl. ¶ 30. The defendants move for dismissal of John Doe with prejudice, arguing that the Federal Rules of Civil Procedure frown upon inclusion of unnamed defendants.

The defendants overstate the extent to which the naming of Doe defendants is considered improper. <u>See, e.g.</u>, <u>Hindes v. FDIC</u>, 137 F.3d 148, 155 (3d Cir. 1998) (noting that Doe defendants are "routinely used" in litigation (quotation marks and citation omitted)). The Court finds that dismissal of the Doe defendant is appropriate in this case, though. John Doe's liability is predicated on the same conduct as the other individual defendants: his knowledge of and failure to prevent implementation of the swimming policy. Because the Court finds

---

remain viable. <u>See</u> <u>Bistrian v. Levi</u>, 696 F.3d 352, 366 n.5 (3d Cir. 2012); <u>Santiago</u>, 629 F.3d at 130 n.8. The Court sees no need to weigh in on that issue at this juncture.

those allegations insufficient to state a claim against the other individual defendants, they also do not make out a claim against John Doe.

III. <u>Conclusion</u>

For the foregoing reasons, the defendants' motion to stay or dismiss is granted in part and denied in part. An appropriate order issues separately.