IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OKITA ALLEN, as                  :      CIVIL ACTION
administratrix of the estate  :
of Carnez William Boone, Jr., :
and individually                 :
                                 :
          v.                     :
                                 :
YOUTH EDUCATIONAL SERVICES     :
OF PA, LLC, et al.               :      NO. 12-4269

MEMORANDUM

McLaughlin, J.                              March 20, 2014


        This § 1983 action arises from the drowning death of a

teenage boy, Carnez William Boone, Jr., on July 30, 2010, while

in the custody of a privately owned juvenile facility acting

pursuant to a contract with the Delaware County Department of

Juvenile Probation and Delaware County Department of Human

Services.  The boy's mother, Okita Allen, brings suit against

the facility, YES Academy, two related corporate entities, Youth

Educational Services of PA, LLC and Youth Services Academy

Incorporated, and individual defendants Joseph Ferrainola and

Damian Ferrainola.  Allen brings a claim under 42 U.S.C. § 1983

for violations of her son's rights under the Eighth and

Fourteenth Amendments.  The Court considers here a motion to

dismiss on behalf of all defendants pursuant to Rule 12(b)(6)

against the plaintiff's second amended complaint.  For the

reasons that follow, the Court will grant the defendants' motion in its entirety.

I.    Background[1]

   A.    Defendants

      YES Academy is a staff-secured residential care facility for male adolescents between the ages of 11 and 18. YES Academy rehabilitates minors referred from juvenile probation departments across Pennsylvania.  YES Academy is affiliated with two other business entities, Youth Educational Services of PA, LLC ("YES of PA"), and Youth Services Academy Incorporated ("YSA," and, collectively, "YES Defendants"). Compl. ¶¶ 22, 47.

      YES of PA and YSA are licensed by the Pennsylvania Department of Public Welfare's Office of Children, Youth and Families to "provide comprehensive residential treatment programs for adolescent males adjudicated by the Juvenile

_____

   [1] The Court accepts all well-pleaded facts in the second amended complaint as true and draws all reasonable inferences in favor of the non-moving party, while disregarding any legal conclusions.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

Courts" of Pennsylvania.[2]  The Delaware County Department of Human Services and the Delaware County Department of Juvenile Probation entered into a contract with the YES Defendants for them to provide treatment services to minors adjudicated by that county's juvenile court.  At all times relevant to this suit, YES of PA and YSA were certified by the Department of Public Welfare to operate a juvenile residential treatment facility, pursuant to 55 Pa. Code § 3800 et seq., under the trade name YES Academy.  The YES Defendants state that their "progressive, behavioral, and independent living system is unparalleled in the state of Pennsylvania" and that YES Academy is "the premier treatment facility in the state specializing in the treatment of juvenile sex offender[s] and juvenile fire setters."  Id. ¶¶ 19, 21, 48-51, 53-54, 56.

Defendant Joseph Ferrainola is the owner and CEO of YES of PA and executive director of YES Academy, and defendant Damian Ferrainola is the assistant director of YES Academy.  In their capacity in those roles, they are allegedly responsible for establishing and implementing policies and procedures, as well as ensuring compliance with Pennsylvania regulations,

---

[2] The term "adjudicated" in this context appears to refer to a determination that the minor was adjudicated delinquent under the Juvenile Act, 42 Pa. Cons. Stat. § 6301 et seq.

related to the treatment of the residents.  These duties allegedly include implementing Individual Service Plans ("ISPs") for the residents and performing health and safety assessments under the relevant regulations.  Id. ¶¶ 24-41.

B.   YES Defendants' Practices Related to Swimming Activities

The plaintiff asserts that the YES Defendants have several policies that related to the swimming activities on July 30, 2010.  YES Academy included swimming activities as part of the treatment program provided to juvenile probation residents. Id. ¶¶ 60, 62-64.  For this assertion, the plaintiff relies on a YES Academy document, which the plaintiff identifies as a "treatment and policy manual," but the defendant identifies as an advertising brochure.  Compl., Ex. A, ECF No. 18-1.

Joseph and Damian Ferrainola implemented ISPs that included off-site recreational swimming without preparing a written safety plan or testing the residents' swimming abilities.  Furthermore, the Ferrainolas did not obtain permission from the residents' probation officers or parents before taking them swimming.  Compl. ¶¶ 61, 67-73, 173-76.

The defendants also allegedly failed to ensure that a certified lifeguard was on duty at the lake on the day of

4

Boone's death, which allegedly violated Pennsylvania state regulations.  Lastly, the defendants failed to properly train YES Academy staff who took the residents to the lake.  Id. ¶¶ 84, 116-23, 131-33, 157-59.


      C.   Pre-Field Trip Meeting with Residents

      In 2010, thirteen-year-old Carnez Boone was adjudicated by the Delaware County Juvenile Court and placed in the custody of the Delaware County Department of Juvenile Probation and the Delaware County Department of Human Services.  They, in turn, assigned him to the "care and custody of the YES Defendants," and he became a resident of YES Academy.  Id. ¶¶ 57-59.

      On the morning of July 30, 2010, Damian Ferrainola held a pre-field trip meeting with residents, according to YES Academy's policy.  At that meeting, Damian Ferrainola asked the residents to raise their hand if they "didn't know how to swim or [weren't] . . . a very good swimmer."  Boone did not raise his hand in response to this question.  Otherwise, the YES Defendants did not test the residents to determine whether they could swim or restricted the residents' activities in the lake during the field trip.  Id. ¶¶ 91-106.

D.  <u>Death of Carnez Boone</u>

On July 30, 2010, the YES Defendants' staff took Boone and approximately fifteen other YES Academy residents to Sandy Lake to go swimming.[3]  Boone did not know how to swim and had not been tested for swimming ability by the YES Defendants or any Delaware County agency.  YES Academy did not obtain permission from either Boone's mother or his probation officer to allow him to go swimming that day.  <u>Id.</u> ¶¶ 107-10.

That afternoon, several of the YES Academy residents were swimming and jumping into the lake, including from a high dive.  The YES Defendants did not place any restrictions on what the residents were permitted to do at Sandy Lake that day, including jumping off the diving board.  <u>Id.</u> ¶¶ 112-15.

The YES Academy staff members did not accompany the residents out to the floating dock where the diving board was located, and there were no lifeguards present on the dock.  The lifeguards were not elevated, but rather were sitting in plastic chairs on the shoreline.  Neither the lifeguards nor the YES Defendants' staff could see the residents jumping into the lake from the shoreline.  <u>Id.</u> ¶¶ 116-23.

---

[3] YES Academy had not taken the residents to Sandy Lake prior to July 30, 2010.  Compl. ¶ 191.

6

After jumping into the lake, Boone had difficulty resurfacing and eventually sank beneath the water. Lifeguards and YES Academy employees were not immediately able to locate him. A bystander, responding to the lake's distress siren, dove into the lake to help. He found Boone at the bottom of the lake and pulled him from the water onto the dock. At that point, Boone had been underwater for approximately fifteen to twenty minutes. Id. ¶¶ 124-29, 136-41.

Lifeguards performed CPR on the dock in the middle of the lake. When paramedics arrived, Boone was transported to the University of Pittsburgh Medical Center-Horizon. CPR was performed on Boone for an additional thirty minutes at the hospital, but medical personnel were unable to revive him. Boone was pronounced dead at 2:11 p.m. from asphyxiation due to drowning. Id. ¶¶ 142-45, 147-49.

E.   Procedural History[4]

The plaintiff filed this suit on July 27, 2012, and filed an amended complaint on September 14, 2012. The defendants filed a motion to dismiss or stay on October 1, 2012.

---

[4] The Court does not restate here, from its prior opinion, the procedural history of the state court actions associated with these events. See Allen v. Youth Educ. Servs. of PA, LLC, No. 12-4269, 2013 WL 1334195, at *3-4 (E.D. Pa. Apr. 2, 2013).

After oral argument on February 21, 2013, the Court granted the defendants' motion to dismiss all claims for failure to state a claim on April 2, 2013.  The plaintiff was granted leave to file an amended complaint within sixty days, which was intended to provide the plaintiff with sufficient time to engage in discovery in the Pennsylvania court action.  The plaintiff filed her second amended complaint on June 3, 2013, and the defendants responded with the motion to dismiss considered here.

### F.   Present Allegations Against the Defendants

Boone's mother, Okita Allen, alleges in this suit that the defendants' actions caused Boone's death.  She claims that Boone's death is attributable to the defendants' policies of taking "residents swimming without first testing or evaluating their swimming abilities."  Compl. ¶ 188.  The plaintiff asserts that the YES Defendants had a policy of including swimming activities in a resident's ISP, without testing a resident's swimming ability or preparing a written safety plan to address whether the resident could safely engage in swimming activities, allegedly violating Pennsylvania regulations.  Furthermore, the YES Defendants allegedly violated Pennsylvania regulations and Boone's constitutional rights by taking him to Sandy Lake to swim, including using the high dive, as part of his ISP without

8

first obtaining the permission of his probation officer or mother and without lifeguards present. The YES Defendants also allegedly failed to implement appropriate training procedures. Id. ¶¶ 170, 173-83.

Allen claims that the defendants were, at all times, acting pursuant to authority delegated by Delaware County and were therefore acting under the color of state law. Id. ¶¶ 168-69. She alleges that the defendants' policy of taking residents swimming without testing or evaluating their swimming abilities violated Boone's constitutional rights "to be free from cruel and unusual punishment, and to substantive and procedural due process, as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution, as remediable pursuant to 42 U.S.C. § 1983." Id. ¶ 189.

## II. Legal Standard

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45 (1957), abrogated in other respects by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A claim may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."

9

Although Rule 8 requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2) and Conley, 355 U.S. at 47). Similarly, naked assertions devoid of further factual enhancement will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 557).

Although "conclusory" or "bare-bones" allegations will not survive a motion to dismiss, Fowler, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

The Court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted. Fowler, 578 F.3d at 210. Any facts pleaded must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-

10

11.   Second, the Court must determine whether those factual
matters averred are sufficient to show that the plaintiff has a
"plausible claim for relief."  Id. at 211 (quoting Iqbal, 556
U.S. at 679).

This two-part analysis is "context-specific" and
requires the Court to draw on "its judicial experience and
common sense" to determine if the facts pleaded in the complaint
have "nudged [the plaintiff's] claims" from "conceivable to
plausible."  Iqbal, 556 U.S. at 679-80.  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Id. at 678.

The Third Circuit has summarized the post-Twombly
standard as follows:  "'[S]tating . . . a claim requires a
complaint with enough factual matter (taken as true) to suggest'
the required element.  This 'does not impose a probability
requirement at the pleading stage,' but instead 'simply calls
for enough facts to raise a reasonable expectation that
discovery will reveal evidence of' the necessary element."
Phillips, 515 F.3d at 234 (citations omitted) (quoting Twombly,
550 U.S. at 556).

11

III. Discussion

In her second amended complaint, Allen brings a claim under § 1983 based on violations of her son's rights to be free from cruel and unusual punishment, and to substantive due process and procedural due process, as guaranteed by the Eighth and Fourteenth Amendments.  All three of these constitutional violations are based on the same conduct.[5]  Allen contends that all of the defendants are responsible for maintaining a policy or custom that caused Boone's death and that the individual

---

[5] Allen cannot proceed on both her Eighth Amendment and Fourteenth Amendment claims.  Noting its "reluctan[ce] to expand the concept of substantive due process," the Supreme Court has established the "more-specific-provision rule."  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842-43 (1998).  Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  United States v. Lanier, 520 U.S. 259, 272 n.7 (1997); see also Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010).  Because Allen alleges the same facts in support of all of her constitutional claims, the Court does not independently analyze those facts under a Fourteenth Amendment substantive due process cause of action, but only under the Eighth Amendment.  See Betts, 621 F.3d at 260-61.

The plaintiff's Fourteenth Amendment procedural due process claim is also properly subsumed into the Eighth Amendment violation as "the gravamen" of her lawsuit is premised on the Eighth Amendment violation.  See Zabresky v. Von Schmeling, No. 12-0020, 2013 WL 315718, at *6 (M.D. Pa. Jan. 28, 2013); Wilson v. City of Cherry Hill, No. 10-3866, 2011 WL 3651274, at *8 n.12 (D.N.J. Aug. 18, 2011); Swedron v. Borough, No. 08-1095, 2008 WL 5051399, at *6 (W.D. Pa. Nov. 21, 2008).

defendants directly participated in infringing her son's constitutional rights.  The defendants move to dismiss all claims, including Allen's request for punitive damages.[6]

The Court concludes that the allegations of the second amended complaint fail to make out a claim for Monell liability. The Court similarly finds that the second amended complaint fails to state a claim against the individual defendants for either their role in establishing and maintaining an unconstitutional policy or participating in the events that caused Boone's death.  The Court will, therefore, dismiss with prejudice the claims against all defendants.[7]

———————————

[6] As a threshold matter, the defendants argue that Allen, in her individual capacity, lacks standing to bring claims based on violations of her son's constitutional rights.  Allen here is listed on the complaint as "the Administratrix of the Estate of Carnez William Boone, Jr., a minor, Deceased, and Individually in her own right."  Allen, as the administratrix of Boone's estate, has standing and capacity to sue for violations of Boone's constitutional rights that occurred before his death. See Massey v. Fair Acres Geriatric Ctr., 881 F. Supp. 2d 663, 666 (E.D. Pa. 2012) (citing Baffa v. Black, 481 F. Supp. 1083, 1085-86 (E.D. Pa. 1979)); see also Rogan v. Cnty. of Lawrence, Pa., No. 12-1375, 2013 WL 3369146, at *6 (W.D. Pa. July 2, 2013).

[7] Because the Court concludes that there is no § 1983 liability, the Court does not address the plaintiff's request for punitive damages.

A.   <u>Municipal Liability</u>

The plaintiff fails to state a claim for municipal liability under § 1983 against either the YES Defendants or the Ferrainola defendants in their capacity as directors of YES Academy.  "A prima facie case under § 1983 requires a plaintiff to demonstrate:  (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."  <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).

When a municipality, or a private contractor standing in its shoes, is sued based on § 1983, "the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom."  <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (citing <u>Monell v. N.Y. City Dep't of Social Servs.</u>, 436 U.S. 658 (1978)); <u>see also</u> <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003) (applying <u>Monell</u> to a private company acting pursuant to a local government contract).  An entity alleged to be a state actor "cannot be held liable under § 1983 on a <u>respondeat superior</u> theory."  <u>Monell</u>, 436 U.S. at 691.  Rather, there must be a "direct causal link between a municipal policy or custom and the alleged

14

constitutional deprivation" to ground municipal liability.
Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249-50 (3d
Cir. 2007) (quoting City of Canton v. Harris, 489 U.S. 378, 385
(1989)).  The Third Circuit has directed that a complaint
alleging a Monell claim "must identify a custom or policy, and
specify what exactly that custom or policy was." McTernan v.
City of York, 564 F.3d 636, 658 (3d Cir. 2009).

        A plaintiff demonstrates the existence of a policy by
showing that a decisionmaker possessing final authority to
establish an entity's policy with respect to the action issues
an official proclamation, policy, or edict.  Muholland v. Gov't
Cnty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013).  A course
of conduct is considered to be a custom when, although not
authorized by law, officials' practices are so permanent and
well-settled as to virtually constitute law.  Id.

        There are three situations where acts of an employee
may be deemed to be the result of a policy or custom of the
entity for whom he works:  (1) the appropriate officer or entity
promulgates an applicable policy statement and the act
complained of is an implementation of that policy; (2) without a
formally announced policy, federal law is violated by an act of
the policymaker; or (3) the "the policymaker has failed to act
affirmatively at all, [though] the need to take some action to

control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"  Natale, 318 F.3d at 584 (alteration in original) (quoting City of Canton, 489 U.S. at 390).

The plaintiff argues that there are several policies that result in liability under Monell.  First, the YES Defendants maintained a policy that includes swimming activities and "Getaways to 'The Lake'" as part of the residents' treatment program.  Joseph Ferrainola and Damian Ferrainola implemented swimming and "Getaways to 'The Lake" as part of the residential treatment program, although they never tested whether Boone or any of the other residents could swim.  The Ferrainolas also failed to establish a safety assessment or written safety plan, as allegedly required under Pennsylvania law, to determine whether the residents could swim.  Lastly, the Ferrainola defendants never obtained permission from the residents' parents or probation officers before taking them swimming as part of their treatment program.  Pl.'s Opp'n at 15.  The defendants argue that the plaintiff fails to allege that the defendants maintained an unconstitutional policy or custom with deliberate indifference to the rights of residents.

16

## 1.   Choice by Policymaking Officials

The Court does not interpret the plaintiff's allegations to argue that an express municipal policy, such as an ordinance, regulation, or policy statement, exists here.[8] This is not a case where a challenged policy statement, ordinance, regulation, or decision was adopted or promulgated by the local entity.   Rather, the Court interprets the plaintiff's assertions to be that an unconstitutional policy existed based on the decision of a person with final policymaking authority, Here, the plaintiff alleges that the Ferrainola defendants are the relevant policymakers of the YES Defendants.

"Municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect

_____

[8] The plaintiff alleges that the defendants' swimming policy is articulated in a YES Academy document, attached to the Complaint at Exhibit A, that identifies educational recreational activities as part of the treatment program provided to residents.   Furthermore, Exhibit A identifies "Kayaking, Fishing and Swimming" as part of the residents' activities, as well as "Getaways to 'The Lake.'"   Compl. ¶¶ 60, 63-64.   The plaintiff does not allege, however, that simply having a policy whereby the residents engage in swimming activities was the cause of Boone's death.   Rather, other decisions made by the defendants' policymakers to implement this swimming policy allegedly led directly to Boone's death.   Those decisions are more appropriately analyzed as a choice by a policymaker, rather than as an officially promulgated policy.

17

to the subject matter in question." Pembaur v. City of
Cincinatti, 475 U.S. 469, 483 (1986) (plurality opinion). An
unconstitutional policy can be inferred from a single decision
taken by the highest officials responsible for setting policy in
that area of business. City of St. Louis v. Praprotnik, 485
U.S. 112, 123 (1988). In Pembaur, the Supreme Court stated:

> [I]t is plain that municipal liability may be imposed
> for a single decision by municipal policymakers under
> appropriate circumstances. No one has ever doubted,
> for instance, that a municipality may be liable under
> § 1983 for a single decision by its properly
> constituted legislative body — whether or not that
> body had taken similar action in the past or intended
> to do so in the future — because even a single
> decision by such a body unquestionably constitutes an
> act of official government policy.

475 U.S. at 480 (plurality opinion).

In addition to showing the existence of an unlawful
policy or custom, the plaintiff must prove "that the municipal
practice was the proximate cause of the injuries suffered."
Bielvicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). To
establish the necessary causation, a plaintiff must demonstrate
a plausible nexus or affirmative link between the custom and the
specific deprivation of constitutional rights at issue. Id.;
see also Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d
Cir. 2004) (quoting City of Canton, 489 U.S. at 385).

18

a.   Swimming Activities in Residents'
Individual Service Plans

The plaintiff alleges that neither the YES Defendants, Joseph Ferrainola, nor Damian Ferrainola implemented any safety measures to ensure that residents were able to swim prior to engaging in swimming activities or "Getaways to 'The Lake'" as part of each resident's ISP.  Compl. ¶¶ 68, 173-74.  The plaintiff cites a YES Academy document, attached to the complaint as Exhibit A, in support of swimming activities being part of the residents' ISPs.

The defendants assert that the YES Academy document is not a treatment or policy manual, nor is it an ISP stating the treatment goals of any specific resident.  The Court agrees. Exhibit A appears to be an informational brochure, rather than a treatment or policy manual.  Furthermore, it states that swimming activities are included in some of the recreational programs offered by YES Academy.  Compl., Ex. A, at 24. Although the plaintiff states that this brochure supports the existence of swimming activities in the residents' ISPs, the brochure does not, in fact, support that conclusion.  Instead, the brochure lists swimming as one recreational offering for residents.

19

The plaintiff's allegations that the defendants had a policy whereby they implemented ISPs requiring residents to swim, regardless of swimming ability, are not supported by the exhibits to the complaint and are otherwise wholly conclusory. The plaintiff fails to adequately plead that this alleged policy resulted in a violation of Boone's federal rights.

b.   Health and Safety Assessment Pursuant to 55 Pa. Code § 3800.141 and .142

The plaintiff alleges that the defendants did not perform a health and safety assessment, including a test of a resident's swimming abilities, in violation of 55 Pa. Code § 3800.141.  The defendants also allegedly failed to prepare a written safety plan to address whether a resident could safely engage in swimming activities, in violation of 55 Pa. Code § 3800.142.  Compl. ¶¶ 69-71, 175-77.  The defendants are correct, however, that neither of these sections includes any mandate regarding swimming activity.

Section 141 mandates that a child's written health and safety assessment shall include the following:

(1) Medical information and health concerns such as allergies; medications; immunization history; hospitalizations; medical diagnoses; medical problems that run in the family; issues experienced by the child's mother during pregnancy; special dietary needs; illnesses; injuries; dental, mental or

20

emotional problems; body positioning and movement
stimulation for children with disabilities, if
applicable; and ongoing medical care needs.

(2) Known or suspected suicide or self-injury attempts
or gestures and emotional history which may indicate a
predisposition for self-injury or suicide.

(3) Known incidents of aggressive or violent behavior.

(4) Substance abuse history.

(5) Sexual history or behavior patterns that may place
the child or other children at a health or safety risk.

55 Pa. Code § 3800.141(c).  None of these categories plausibly
relate to documenting swimming experience.

        Section 142 mandates that "if the health and safety
assessment in § 3800.141 . . . identifies a health or safety
risk, a written plan to protect the child shall be developed and
implemented within 24 hours after the assessment is completed."
55 Pa. Code § 3800.142.  Because a child's ability to swim need
not be included in the health and safety assessment under
section 141, a written health and safety plan on that issue also
need not be completed.

        Based on the language of these provisions, residents'
swimming proficiency is not a health or safety risk that is
required to be addressed in the evaluation when the resident is
admitted.  A child's inability to swim is typically not high-
risk behavior or other important medical information that would

21

require documentation under these regulations.  Because the
defendants were not required to evaluate Boone's swimming
abilities when he was admitted to YES Academy under these
regulations, the plaintiff fails to adequately plead that this
alleged policy violated Pennsylvania regulations or resulted in
a violation of Boone's federal rights.

> ### c.   Permission from Residents' Parents or Probation Officers

The plaintiff alleges that the defendants maintained a
policy not to obtain consent from parents or probation officers
before taking residents on off-site trips.  Compl. ¶¶ 53-55, 72-
76, 109-10.  The plaintiff alleges that the defendants were
required to obtain permission from a probation officer or parent
before taking the residents to off-site activities, pursuant to
the YES Defendants' contract with the Delaware County Department
of Human Services.  That contract is attached to the plaintiff's
complaint at Exhibit B.  Id. ¶¶ 53-55.  The defendants argue
that this agreement does not apply to the swimming outing that
resulted in the death of Carnez Boone.  The Court agrees.

The only provision of the agreement that discusses
obtaining permission from parents or guardians is the section on
human experimentation.  That section states that with regard to

"all experimentation with human subjects involving any physical or mental risk to those subjects . . . [i]f the subject is a minor or incompetent, a voluntary informed consent of his/her parents or legal guardian, shall be required." Compl., Ex. B, ¶ 19, at 9.  That provision has no applicability to the events surrounding the swimming trip on July 30, 2010.  The plaintiff does not allege that any human experimentation occurred relating to that trip.  Accordingly, the plaintiff fails to adequately plead that this alleged policy resulted in a violation of Boone's federal rights.

### d.   Lifeguards

The plaintiff alleges that the defendants failed to ensure that a certified lifeguard was "present with the children" while they were swimming, in violation of 55 Pa. Code § 3800.106.  Compl. ¶¶ 117-23, 126-28.  Section 106 states, "A certified lifeguard shall be present with the children at all times while children are swimming."  55 Pa. Code § 3800.106(c).

First, it is not clear to the Court what the plaintiff's allegations are regarding the presence of lifeguards.  For example, the plaintiff alleges that YES Defendants' staff and lifeguards were present on shore.  Id. ¶¶ 121-23, 127-28.  The plaintiff, however, then alleges that

23

"Defendants violated Carnez Boone's constitutional rights by permitting the use [of] the high dive where there were no lifeguards present in violation of 55 Pa. Code § 3800.106(c)." Id. ¶ 183.  These allegations are inherently contradictory.

Furthermore, the Pennsylvania Department of Public Welfare has issued a regulatory compliance guide on the regulations governing child residential and day treatment facilities.  With regard to section 106, the guide notes that "present with the children" usually means "within visual or auditory range."  Pa. Dep't of Public Welfare, Regulatory Compliance Guide, 55 Pa. Code Chapter 3800, at 18 (Jan. 1, 2013), http://www.dpw.state.pa.us/cs/groups/webcontent/ documents/communication/p_023326.pdf.  Although the plaintiff alleges that the lifeguards could not, at all times, see the residents jumping from the high dive, the plaintiff does not allege that the residents were also out of auditory range.  See Compl. ¶¶ 122-23.

Lastly, it is not clear that this regulation would be applicable where, as here, the swimming occurred off-site at a privately owned lake operated by a third party.  Rather, section 106 addresses the "Physical Site" of "Child Residential and Day Treatment Facilities," according to the regulation's section titles.  55 Pa. Code § 3800.106.  Therefore, it is not clear to

24

the Court that the defendants were in violation of this
regulation.  Accordingly, the plaintiff fails to adequately
plead that this alleged policy resulted in a violation of
Boone's federal rights.


        2.  Custom

        "A course of conduct is considered to be a 'custom'
when, though not authorized by law, 'such practices of state
officials [are] so permanent and well settled' as to virtually
constitute law."  Andrews v. City of Phila., 895 F.2d 1469, 1480
(3d Cir. 1990) (alteration in original) (quoting Monell, 436
U.S. at 690).

        Evidence of a single incident, without more, will not
suffice to establish the existence of a custom:  "A single
incident by a lower level employee acting under color of
law . . . does not suffice to establish either an official
policy or a custom.  However, if a custom can be established by
other means, a single application of the custom suffices to
establish that it was done pursuant to official policy and thus
to establish the agency's liability."  Fletcher v. O'Donnell,
867 F.2d 791, 793 (3d Cir. 1989) (citing Oklahoma City v.
Tuttle, 471 U.S. 808 (1985) (plurality opinion)).  For example,
a plaintiff can present evidence of a pattern of similar

25

incidents and inadequate responses to demonstrate custom through acquiescence.  See Beck, 89 F.3d at 972.

Allen has not alleged any pattern of relevant incidents relating to Boone's death while swimming.  For example, the defendants have never taken residents to go swimming off-site before July 30, 2010, and no other residents have ever drowned.  Compl. ¶¶ 191-92.  Therefore, Allen has not sufficiently pleaded the "permanent and well settled" course of conduct necessary to establish an official custom.

### 3.    Failure to Train, Supervise, or Adopt Necessary Policy

Municipal liability may arise if the constitutional tort is caused by an official policy of inadequate training, supervision, or investigation, or by a failure to adopt a needed policy.  The Third Circuit has held that the failure to adopt a needed policy can result in municipal liability in an appropriate case, and has analyzed that question using the deliberate indifference test.  See Natale, 318 F.3d at 585 ("A reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those

inmates' medical needs."); see also Berg v. Cnty. of Allegheny,
219 F.3d 261, 276 (3d Cir. 2000) ("If . . . the policy or custom
does not facially violate federal law, causation can be
established only by 'demonstrat[ing] that the municipal action
was taken with "deliberate indifference" as to its known or
obvious consequences.  A showing of simple or even heightened
negligence will not suffice.'" (quoting Board of Cnty. Comm'rs
of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 407 (1997)).

        Furthermore, liability for failure to train
subordinate officers will lie only where a constitutional
violation results from deliberate indifference to the
constitutional rights of the residents.  Groman, 47 F.3d at 637.
"A pattern of similar constitutional violations by untrained
employees is 'ordinarily necessary' to demonstrate deliberate
indifference for purposes of failure to train."  Connick v.
Thompson, 131 S. Ct. 1350, 1360 (2011) (quoting Bd. of Cnty.
Comm'rs of Bryan Cnty., 520 U.S. at 409)).[9]

_____

        [9] Only in a narrow range of cases, Connick, 131 S. Ct. at
1366, can deliberate indifference be shown absent a pattern of
prior violations.  There, a plaintiff must demonstrate that a
constitutional violation was sufficiently foreseeable.  See City
of Canton, 489 U.S. at 390 ("[I]n light of the duties assigned
to specific officers or employees the need for more or different
training is so obvious, and the inadequacy so likely to result
in the violation of constitutional rights, that the

To determine whether a municipality's alleged failure to train its employees amounted to deliberate indifference, it must be shown that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Doe v. Luzerne Cnty., 660 F.3d 169, 179-80 (3d Cir. 2011) (quoting Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999)).

The plaintiff here alleges that the defendants violated Boone's constitutional rights "in failing to implement policies and procedures to protect juvenile probation residents from the potential of drowning during swimming activities as part of their ISPs . . . ." Compl. ¶ 13; see also id. ¶ 155. The plaintiff also asserts that the YES Academy staff who took the residents to the lake were not properly trained in how to monitor or rescue the residents. Id. ¶¶ 131-33, 146, 157-59, 170. Because the YES Academy employees who were responsible for protecting the swimmers were not trained in lifesaving techniques, the need for more or different training is allegedly obvious. Pl.'s Opp'n at 19. The plaintiff states, however,

---

policymakers . . . can reasonably be said to have been deliberately indifferent to that need.").

that the defendants have never taken residents to go swimming off-site before July 30, 2010, and no other residents have ever drowned.  Compl. ¶¶ 191-92.

The Court finds that the plaintiff has not adequately pleaded that the defendants' alleged failure to train its employees amounted to deliberate indifference.  Under the first prong, of course it is possible that in the course of taking a group of children swimming, one of them could need lifesaving assistance while in the water.  It is not the case, however, that the defendants were on notice that Boone could not swim.  Compl. ¶¶ 91-106.  Second, there is no history of employees mishandling swimming trips, because this is the first time the residents went swimming off-site before July 30, 2010, and no other residents have ever drowned.  Id. ¶¶ 191-92.  Therefore, the plaintiff has failed to state a claim for municipal liability under § 1983 for a failure to train.

B.   Supervisory Liability

The plaintiff fails to state a claim for supervisory liability under § 1983 against either of the Ferrainola defendants.  "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in

29

charge, had knowledge of and acquiesced in his subordinates' violations." <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004).[10]

The plaintiff alleges that Joseph Ferrainola is liable for making decisions involving planning the residents' trip to the lake, failing to impose certain alleged safety requirements, and failing to obtain permission from residents' parents or probation officers. Compl. ¶¶ 77-89.  The plaintiff also alleges that Damian Ferrainola held a meeting with residents that did not include testing or adequately address safety.  <u>Id.</u> ¶¶ 90-107.  For the same reasons that these alleged shortcomings did not result in municipal liability, they also do not result in supervisory liability here.  The plaintiff's assertions regarding these policies do not adequately allege that either Ferrainola defendant participated in violating Boone's rights or directed others to violate them.

A policymaking supervisor's liability on a failure-to-train theory is the same as for municipal liability.  <u>See, e.g.</u>,

_____

[10] The Court notes that, in the wake of <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), it is questionable whether supervisory liability claims based on knowledge of and acquiescence in the commission of a constitutional violation remain viable.  See <u>Bistrian v. Levi</u>, 696 F.3d 352, 366 n.5 (3d Cir. 2012); <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 n.8 (3d Cir. 2010).  The Court sees no need to weigh in on that issue at this juncture.

Gilles v. Davis, 427 F.3d 197, 207 n.7 (3d Cir. 2005) ("A
supervising authority may be liable under § 1983 for failing to
train police officers when the failure to train demonstrates
deliberate indifference to the constitutional rights of those
with whom the officers may come into contact . . . ."). For the
same reason that there was no municipal liability for failure to
train, Allen has also not pleaded the necessary elements to
state a claim against the Ferrainola defendants for failure to
train YES Academy employees.

Individuals who are policymakers can also be liable if
they "with deliberate indifference to the consequences,
established and maintained a policy, practice or custom which
directly caused [the] constitutional harm." A.M., 372 F.3d at
586 (alteration in original) (quoting Stoneking v. Bradford Area
Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). A deliberate
indifference claim under the Eighth Amendment can be made out
against a supervisor by showing that "(1) the existing
policy . . . created an unreasonable risk of the Eighth
Amendment injury; (2) the supervisor was aware that the
unreasonable risk was created; (3) the supervisor was
indifferent to that risk; and (4) the injury resulted from the
policy." Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir.
2001). The Court concluded above that plaintiff did not

31

sufficiently allege the existence of the defendants' policies or customs.  For the same reasons, there can be no supervisory liability founded on establishment of those alleged policies.

Therefore, the plaintiff has failed to state a claim for supervisory liability under § 1983 against either Joseph or Damian Ferrainola.

C.   Individual Liability

The plaintiff fails to state a claim for individual liability under § 1983 against either of the Ferrainola defendants.  When a plaintiff brings a § 1983 claim against a defendant in his individual capacity, the plaintiff must establish that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis omitted).  Personal involvement can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence." Id.

The Third Circuit has applied the Eighth Amendment to conditions-of-confinement claims raised by adjudicated minors in a state-run juvenile detention center.  See Betts, 621 F.3d at 252, 256-59; Beers-Capitol, 256 F.3d 120.  Allen's individual liability claims under the Eighth Amendment require showing that

32

the Ferrainola defendants both "know[] of and disregard[] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Beers-Capitol, 256 F.3d at 132, 135.  The official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.  Farmer, 511 U.S. at 837-38.[11]

The plaintiff's allegations against the Ferrainola defendants relate to their policymaking duties.  The plaintiff only alleges that the Ferrainola defendants' development and implementation of various policies resulted in Boone's death. For example, the plaintiff alleges that Joseph Ferrainola made decisions to plan the trip to the lake and failed to impose certain safety requirements or obtain permission from the residents' parents or probation officers.   Compl. ¶¶ 77-87. The plaintiff also alleges that Damian Ferrainola held a meeting with residents that did not include testing or adequately address safety.  Id. ¶¶ 88-107.  These allegations were addressed above, and the Court found they did not state a claim for supervisory liability.  These allegations also do not state

--------

[11] The subjective deliberate indifference standard under the Eighth Amendment is distinct from the objective deliberate indifference standard for municipal liability through inadequate training, supervision, or screening.  See Farmer, 511 U.S. at 840-41 (distinguishing City of Canton, 489 U.S. 378).

a claim that the Ferrainola defendants were deliberately
indifferent in violation of the Eighth Amendment.


        D.   Leave to Amend

        The plaintiff here has filed three complaints, this
being her second amended complaint.  The most recent amendment
was in response to this Court's dismissal of her first amended
complaint pursuant to Rule 12(b)(6).

        The Third Circuit has held that if a complaint is
vulnerable to dismissal under Rule 12(b)(6), the district court
must permit a curative amendment, unless an amendment would be
inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235-36
(3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d
103, 108 (3d Cir. 2002)).  Dismissal without leave to amend is
justified on the grounds of bad faith, undue delay, prejudice,
or futility.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)
(citing In re Burlington Coat Factory Sec. Litig., 114 F.3d
1410, 1434 (3d Cir. 1997)).

        The Court declines to allow Allen leave to file a
third amended complaint because further amendment would be
futile.  The plaintiff has been consistently unable, either in
her written pleadings or at oral argument, and even after a
period of discovery, to identify a policy or custom that would

                              34

support that defendants are liable under § 1983 for the death of

Carnez Boone.

An appropriate Order shall issue.